McNAIRY v. HICKS.

LANDLORD AND TENANT. *Trespass. Rights of lessee.* Where there was an avowed trespasser upon the lessee's right of possession, who pretended no claim to or interest in the property, and who so notified the lessee, and the latter never objected to paying rent on account of such trespasser's occupancy of the premises until more than a year from the beginning of the lease;

*Held,* That it was the right and duty of the lessee, who was in contemplation of law in possession from the moment of the delivery of the lease, to eject the trespasser, and not the duty of the lessor, unless he holds under some claim of right. And there must be something which in law amounts to an eviction or expulsion of the tenant to work a suspension of the rent.

Authorities cited: Taylor on Landlord and Tenant, 215–19; 1 Washb. R. P., 461.

FROM DAVIDSON.

Appeal from the Circuit Court. NATHANIEL BAXTER, Judge.

A. G. MERRITT for McNairy.

No brief appears for Hicks.

SNEED, J., delivered the opinion of the Court.

. The plaintiff leased a lot in Nashville to the defendant for four years, from the 1st of January, 1870. The rent agreed to be paid was $200, payable in two instalments, on the 1st of July and October. This

action was brought to recover the balance of the instalment due on the 1st of October, 1870, and the whole of the instalment due on the 1st of July, 1871, the defendant having paid the rent due the 1st of July, 1870, and a portion of that due the 1st of October, 1870.

The verdict and judgment below were for the plaintiff, from which Hicks, the defendant, has appealed in error.  The defendant resists a recovery upon the theory that the lessor's covenant for quiet enjoyment of the property had been broken.  The facts are, that the defendant, after inspecting the lot, applied in person to the plaintiff's agent to lease it, and the contract was at once closed.  The defendant was an ice merchant, and proposed to erect on the lot a large ice depot.  It appears that one Brennan had leased the lot before the war, and being an iron foundryman, had erected a portion of his machinery on the lot, and also some sheds used by him as shelters or depositories for scrap iron and such articles of iron manufacture as his customers brought in for repairs.  Brennan had thus occupied the lot from the beginning of his term as ·lessee until expelled by a detachment of the Federal army during the war.  At the termination of the war, his lease having long since expired, Brennan, without renewal, re-occupied a portion of the lot, having appropriated about ten feet of it in the erection of his boilers, and the part also on which said sheds were located.  This was the condition of things when the defendant leased the lot, all of which was

well known to the defendant. Brennan was informed
by the defendant of the lease, and set up no claim
to any portion of the lot, but promised at once to
leave it, and to take off all of said erections. This
he promised to do time after time, whenever called
upon, but continually neglected to do so. He offered
to pay defendant rent for the portion of the lot so
occupied by him, but no contract for rent was agreed
on between them. It is admitted by defendant that
Brennan never claimed the lot, or forbade his entry,
but simply temporized with defendant in promising to
remove and failing to do so. In the meantime the
defendant has taken no steps to eject him, but has
rented other property, and permitted Brennan to occupy
the premises up to the time of the trial of this action.
He promptly paid the first half-yearly instalment of
rent for 1870, and paid a part of that falling due in
October, 1870, without further complaint to the plain-
tiff than that he had no money to pay the balance.
It appears that he never did object to paying rent on
account of Brennan's occupancy of the premises until
July, 1871, about the time this action was brought.
The plaintiff, upon said complaint, called upon Brennan,
who at once notified defendant in writing, as he had
often before done verbally, that he had no claim upon
the property, and that he, the defendant, could take
possession at any time. It is manifest, upon this
state of facts, that Brennan was an avowed trespasser
upon defendant's right of possession, and pretending no
claim or interest in the lot, claiming no right under

his old lease or otherwise, it was the right and duty of the defendant, who was in contemplation of law in possession from the moment of the delivery of the lease, to eject Brennan, and not the duty of the plaintiff. It would have been otherwise, however, if Brennan had been holding under a claim of right. In that event the covenant for quiet enjoyment, implied in every lease, would have imposed upon the plaintiff the duty of protecting the defendant's possession. Thus it is said, there must be something, which in law amounts to an eviction or expulsion of the tenant, to work a suspension of the rent. A mere trespass on the premises, though attended with great inconvenience or obstruction to the tenant in the beneficial enjoyment, is not enough. 1 Washb. R. P., 461. If the tenant is ousted by one who has no title, it is only a trespass, and the law leaves him to his remedy against the wrong doer, as it arises from no fault of the landlord. If the party holding be a wrong doer, the remedy of the lessee is as perfect and effectual to dispossess him after, as that of the lessor was before, the execution of the lease, either by ejectment or summary proceedings under the Statute. Therefore, where the lessee is prevented from entering into possession by a former tenant whose term has expired, his remedy is against the latter and not against the landlord. Taylor, Land. and Tenant, 215, 219.

These principles we hold to be decisive of the case. They sustain the charge of the Court to the jury, and

also sustain the ruling of his Honor in declining to charge as requested. The defendant could have ousted the trespasser at any time, and in a very summary manner, and he must charge his misfortune to his own forbearance, and not to the broken covenants of his lease. Affirm the judgment.